**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| EXPRESS MOBILE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No._____ |
| | ) | |
| SQUARESPACE, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff Express Mobile, Inc. ("Express Mobile" or "Plaintiff"), by and through its undersigned counsel, brings this action for patent infringement against Defendant Squarespace, Inc. ("Squarespace" or "Defendant") and alleges as follows:

## NATURE OF THE ACTION

1.     This is a civil action arising under 35 U.S.C. § 271 for Squarespace's infringement of Express Mobile's United States Patent Nos. 6,546,397 ("the '397 patent"), 7,594,168 ("the '168 patent"), 9,063,755 ("the '755 patent"), 9,471,287 ("the '287 patent"), and 9,928,044 ("the '044 patent") (collectively the "Patents-In-Suit").

## THE PARTIES

2.     Plaintiff Express Mobile, Inc. is a Delaware corporation with a place of business at 38 Washington Street, Novato, CA 94947.

3.     Upon information and belief, Defendant Squarespace, Inc. is a Delaware corporation with a registered agent at Incorporating Services, Ltd., 3500 S Dupont Hwy, Dover, DE 19901, and a place of business at 225 Varick Street, 12th Floor, New York, NY 10014.

## JURISDICTION AND VENUE

4.      This is a civil action for patent infringement arising under 35 U.S.C. § 271.

5.      This Court has subject matter jurisdiction over the matters pleaded herein under 28 U.S.C. §§ 1331 and 1338(a).

6.      This Court has personal jurisdiction over Defendant because it has purposefully availed itself of the rights and benefits of the laws of this State and this Judicial District. On information and belief, Defendant is organized and existing under the laws of Delaware. This Court also has personal jurisdiction over Defendant because, on information and belief, Defendant has transacted or does transact business in this Judicial District, directly or through intermediaries, and has committed, contributed to, and/or induced acts of patent infringement in this Judicial District.

7.      Venue is proper in this Judicial District under 28 U.S.C. §§ 1391 and 1400(b).

## THE PATENTS-IN-SUIT

8.      On April 8, 2003, United States Patent No 6,546,397 entitled "Browser Based Web Site Generation Tool and Run Time Engine," was duly and legally issued to Steven H. Rempell after full and fair examination. Plaintiff is the lawful owner of all right, title, and interest in and to the '397 patent, including the right to recover for infringement thereof. A copy of the '397 patent is attached as Exhibit A.

9.      The claimed inventions of the '397 patent solve technical problems related to the creation and generation of websites. For example, the inventions enable the creation of websites through browser-based visual editing tools, for example, selectable settings that describe website elements, with one or more settings corresponding to commands. These features are implemented utilizing computer technology, including a virtual machine.

10.     The claims of the '397 patent do not merely describe performing some known business practice on the Internet. Instead, the claims of the '397 patent recite inventive concepts that are rooted in computerized website creation technology and overcome problems specific to this realm.

11.     The claimed inventions of the '397 patent do not merely apply routine or conventional technologies for website creation and generation. Instead, the claims describe a browser-based website creation system and method in which information representing user-selected settings for a website are stored in a database, and the stored information is retrieved to generate the website.

12.     The claims in the '397 patent do not preempt all ways of creating and generating websites or web pages, all uses of website authoring tools, nor any other well-known prior art technology.

13.     Each claim of the '397 patent thus recites a combination of elements sufficient to ensure that the claim amounts to significantly more than a patent- ineligible concept.

14.     On September 22, 2009, United States Patent No 7,594,168 entitled "Browser Based Web Site Generation Tool and Run Time Engine," was duly and legally issued to Steven H. Rempell after full and fair examination. Plaintiff is the lawful owner of all right, title, and interest in and to the '168 patent, including the right to recover for infringement thereof. A copy of the '168 patent is attached as Exhibit B.

15.     The claimed inventions of the '168 patent solve technical problems related to the creation and generation of websites. For example, the inventions utilize browser-based build tools and a user interface to enable the creation of websites. These inventions greatly improve the

3

productivity of the designer utilizing an innovative implementation for styles. These features are implemented utilizing computer technology.

16.     The claimed inventions of the '168 patent do not perform a known business practice on the Internet. Instead, the claims of the '168 patent recite inventive concepts rooted in computerized website creation technology, and overcome problems specifically arising in this realm.

17.     The claimed inventions of the '168 patent do not merely apply routine or conventional technologies for website creation and generation. Instead, the inventions describe a browser-based website creation system including a server comprising a build engine configured to create and apply styles to, for example, a website with web pages comprised of objects.

18.     The claims in the '168 patent do not preempt all ways of creating and generating websites or web pages, all uses of website authoring tools, nor any other well-known or prior art technology.

19.     Each claim of the '168 patent thus recites a combination of elements sufficient to ensure that the claim amounts to significantly more than a patent-ineligible concept.

20.     In Case No. 3:18-CV-04679-RS, an infringement action filed by Plaintiff in the Northern District of California, the defendant in that action, Code and Theory LLC, brought a Motion to Dismiss Plaintiff's Complaint, asserting that the '397 and '168 patents do not claim patent-eligible subject matter under 35 U.S.C. § 101 as a matter of law. (Case No. 3:18-CV-04679-RS D.I. 35.) Subsequent briefing included Plaintiff Express Mobile, Inc.'s Opposition to Defendant Code and Theory LLC's Motion to Dismiss Plaintiff's Complaint (Case No. 3:18-CV-04679-RS D.I. 40), and Motion to Dismiss Plaintiff's Complaint [sic] (Case No. 3:18-CV-04679-RS D.I. 41). Each of those filings is incorporated by reference into this Complaint.

21.     In Case No. 3:18-CV-04688-RS, an infringement action filed by Plaintiff in the Northern District of California, the defendant in that action, Pantheon Systems, Inc., brought a Motion to Dismiss Counts I and II of Plaintiff's First Amended Complaint asserting that the '397 and '168 patents were directed to the abstract idea of creating and displaying webpages based upon information from a user with no further inventive concept, and purportedly ineligible for patenting under 35 U.S.C. § 101. (Case No. 3:18-CV-04688-RS D.I. 26.) Subsequent briefing included Plaintiff's Answering Brief in Opposition of Defendant's Motion to Dismiss (Case No. 3:18-CV-04688-RS D.I. 32), and Reply in Support of Defendant's Motion to Dismiss Counts I and II of Plaintiff's First Amended Complaint (Case No. 3:18-CV-04688-RS D.I. 34). Each of those filings is incorporated by reference into this Complaint.

22.     After a motion hearing and a consideration of the respective pleadings, the Hon. Richard Seeborg denied both motions with respect to both patents in a joint order, because "the patents purport to describe a novel technological approach to creating websites on the internet." (Case No. 3:18-CV-04679-RS D.I. 45; Case No. 3:18-CV-04688-RS D.I. 40; attached as Exhibit F.) In denying the motions, Judge Seeborg made several findings:

- "The patents here are directed at a purportedly revolutionary technological solution to a technological problem—how to create webpages for the internet in a manner that permits 'what you see is what you get' editing, and a number of other alleged improvements over the then-existing methodologies." *Id*. at 5.

- The claims of the '397 and '168 patents are "directed to a specific improvement to the way computers operate," and "it simply cannot be said on the present record that the claims are drawn so broadly as to be divorced from the potentially patent-eligible purported technological improvements described in the specification." *Id*. at 5-6.

23.     In C.A. 2:17-00128, an infringement action filed by Plaintiff in the Eastern District of Texas, the defendant in that action, KTree Computer Solutions, brought a Motion for Judgement on the Pleadings, asserting that the '397 and '168 patents were invalid as claiming

abstract subject matter under 35 U.S.C. § 101. (C.A. 2:17-00128 D.I. 9.) Subsequent briefing included Plaintiff's Response and related Declarations and Exhibits (C.A. 2:17-00128 D.I. 17, 22-24), KTree's Reply (C.A. 2:17-00128 D.I. 25), and Plaintiff's Sur-Reply and related Declarations and Exhibits (C.A. 2:17-00128 D.I. 26-27). Each of those filings is incorporated by reference into this Complaint.

24.     After consideration of the respective pleadings, Magistrate Judge Payne recommended denial of KTree's motion, without prejudice, holding that "the claims appear to address a problem particular to the internet: dynamically generating websites and displaying web pages based on stored user-selected settings" and further stating "the asserted claims do not bear all of the hallmarks of claims that have been invalidated on the pleadings by other courts in the past. For example, the claims are not merely do-it-on-a-computer claims." (C.A. 2:17-00128 D.I. 29, attached as Exhibit G.) No objection was filed to the Magistrate Judge's report and recommendation and the decision therefore became final.

25.     In Case Nos. 1:18-CV-01173-RGA and 1:18-CV-01175-RGA, infringement actions filed by Plaintiff in the District of Delaware, the respective defendants in those actions, DreamHost LLC and Hostway Services, Inc., brought Motions to Dismiss claims of the '397 and '168 patents on the basis of invalidity under 35 U.S.C. § 101. (Case No. 1:18-CV-01173-RGA D.I. 14; Case No. 1:18-CV-01175-RGA D.I. 14.) Subsequent briefing included Plaintiff's Responses and related Declarations and Exhibits (Case No. 1:18-CV-01173-RGA D.I. 18-21; Case No. 1:18-CV-01175-RGA D.I. 17-19), and defendants' Replies (Case No. 1:18-CV-01173-RGA D.I. 24; Case No. 1:18-CV-01175-RGA D.I. 23). Each of these filings is incorporated by reference.

26.     After consideration of the respective pleadings, Judge Andrews denied both motions in a joint order, pointing to factual allegations of inventiveness identified by the Plaintiff,

and an expert declaration explaining inventiveness of the claims, noting that such factual issues preclude a finding of invalidity on a motion to dismiss. (Case No. 1:18-CV-01173-RGA D.I. 43; Case No. 1:18-CV-01175-RGA D.I. 42; attached as Exhibit H.)

27.     On June 23, 2015, United States Patent No 9,063,755 entitled "Systems and methods for presenting information on mobile devices," was duly and legally issued to Steven H. Rempell, David Chrobak and Ken Brown after full and fair examination. Plaintiff is the lawful owner of all right, title, and interest in and to the '755 patent, including the right to recover for infringement thereof. A copy of the '755 patent is attached as Exhibit C.

28.     The inventions of the '755 patent utilize inventive concepts to solve technical problems, such as those associated with methods and systems for displaying dynamic content on displays of devices, providing more efficient ways of generating code for more uniformly displaying dynamic content across different kinds of devices. For example, the inventions of the '755 patent allow a data-efficient and flexible association between a symbolic name and a UI object (e.g., a UI object for a widget), corresponding to a web component of a web service, that is defined for presentation on a display of a device. A device-independent application including the symbolic name is produced and provided to the device, together with a device-platform-dependent player.

29.     The claimed inventions of the '755 patent allow the UI object to be efficiently displayed across different kinds of devices (e.g., PC, mobile or tablet; or different browsers, operating systems, and applications, including also for example both native and browser-based applications). In turn, a user can enter an input value to the UI object, and obtain an output value based on a web service associated with the UI object, the input value and output value also being communicated through symbolic names to provide an additional level of efficiency. These

inventive features are implemented utilizing computer technology and solve technical problems in the prior art.

30.     The claims of the '755 patent do not recite merely the performance of a known business practice on the Internet. Instead, the claims of the '755 patent recite inventive concepts concerning the computerized, data-efficient generation of server-based content (e.g., a UI object for providing dynamic content) on displays for different types of devices, such as PC, tablet, or mobile devices, or different browsers and applications. For example, the claims of the '755 patent utilize symbolic name associations and provide device-independent applications including those symbolic names, together with device-platform-dependent players, to devices. Further, input values and output values for the defined content are also communicated as symbolic names. Such features are specifically grounded in, and overcome problems with data efficiency and flexibility specifically arising in, the realm of computerized content generation and display technologies, and are not well-understood, routine, and conventional elements.

31.     For example, the claimed inventions of the '755 patent recite innovative, technical improvements that associate symbolic names with defined UI objects (e.g., UI objects for a widget) corresponding to web components of web services, and produce device-independent applications including those symbolic names, together with device-dependent players, to provide more uniform, data-efficient content display across different types of devices.

32.     The technology claimed in the '755 patent does not preempt all ways for the computerized generation of code for a display of a device, nor any other well-known or prior art technology. For example, the specific, innovative technical improvements claimed in the '755 patent do not preempt well-known methods of generating code for a display of a device by programming in HTML or JavaScript code.

33.     Each claim of the '755 patent thus recites a combination of elements sufficient to ensure that the claim amounts to significantly more than a patent on an ineligible concept.

34.     On October 18, 2016, United States Patent No 9,471,287 entitled "Systems and Methods for Integrating Widgets on Mobile Devices," was duly and legally issued to Steven H. Rempell, David Chrobak and Ken Brown after full and fair examination. Plaintiff is the lawful owner of all right, title, and interest in and to the '287 patent, including the right to recover for infringement thereof. A copy of the '287 patent is attached as Exhibit D.

35.     The inventions of the '287 patent solve technical problems, such as those associated with methods and systems for displaying dynamic content on displays of devices by providing more efficient ways of generating code for more uniformly displaying dynamic content across different kinds of devices. For example, the inventions of the '287 patent allow a data-efficient and flexible association between a symbolic name and a UI object (e.g., a UI object for a widget) corresponding to a web component of a web service, that is defined for presentation on a display of a device. The defined UI object can be selected by a user of an authoring tool or automatically selected by a system based on a web component selected by the user. Further, the symbolic name has a data format type corresponding to a subclass of UI objects that support the data format type of the symbolic name. A device-independent application including the symbolic name is then produced and provided to the device together with a device—platform-dependent player. Such operations provide a user-friendly platform allowing the UI object to be efficiently defined and more uniformly displayed across different kinds of devices (e.g., PC, mobile or tablet; or different browsers, operating systems, and applications, including also for example both native and browser-based applications). These inventive features are implemented utilizing computer technology and solve technical problems in the prior art.

36.     The claims of the '287 patent do not recite merely the performance of a known business practice on the Internet. Instead, the claims of the '287 patent recite inventive concepts grounded in the computerized, data-efficient definition and generation of content (e.g., a UI object for providing dynamic content) on displays for different types of devices, such as PC, tablet, or mobile devices, or different browsers and applications. Such features are specifically grounded in, and overcome problems with data efficiency and flexibility specifically arising in, the realm of computerized content generation and display technologies, and are not well-understood, routine, and conventional elements.

37.     For example, the claimed inventions of the '287 patent recite innovative, technical improvements that associate symbolic names with UI objects (e.g., UI objects for a widget) corresponding to web components of web services that are manually or automatically selected, and defined based on, for example, data format type, and produce device-independent applications including those symbolic names, together with device-dependent players, to provide more uniform, data-efficient server-based content display across different types of devices.

38.     The technology claimed in the '287 patent does not preempt all ways for the computerized generation of code for a display of a device nor any other well-known or prior art technology. For example, the specific, innovative technical improvements do not preempt well-known methods of generating code for a display of a device by programming in HTML or JavaScript code.

39.     Each claim of the '287 patent thus recites a combination of elements sufficient to ensure that the claim amounts to significantly more than a patent on an ineligible concept.

40.     On March 27, 2018, United States Patent No 9,928,044 entitled "Systems and Methods for Integrating Widgets on Mobile Devices," was duly and legally issued to Steven H.

10

Rempell, David Chrobak and Ken Brown after full and fair examination. Plaintiff is the lawful owner of all right, title, and interest in and to the '044 patent, including the right to recover for infringement thereof. A copy of the '044 patent is attached as Exhibit E.

41.     The inventions of the '044 patent solve technical problems, such as those associated with methods and systems for displaying dynamic content on displays of devices by providing more efficient ways of generating, storing, and retrieving code for displaying dynamic content more uniformly across different kinds of devices. For example, the inventions of the '044 patent allow a data-efficient and flexible association between a symbolic name with a UI object (e.g., a UI object for a widget) corresponding to a web component of a web service, that is manually or automatically selected. The symbolic name has a data format type corresponding to a subclass of UI objects that support the data format type of the symbolic name, and is only available to UI objects that support the data format of the symbolic name. Information representative of the defined UI object can be stored in a database, and subsequently retrieved from the database to build an application consisting of at least a portion of the database using a player, which uses the information to generate one or more web pages for display across different kinds of devices (e.g., PC, mobile or tablet; or different browsers, operating systems, and applications, including also for example both native and browser-based applications). These inventive features are implemented utilizing computer technology and solve technical problems in the prior art.

42.     The claims of the '044 patent do not recite merely the performance of a known business practice on the Internet. Instead, the claims of the '044 patent recite inventive concepts grounded in the computerized, data-efficient definition, selection, storage and generation of user defined content (e.g., a UI object for providing dynamic content) on displays for different types of devices, such as PC, tablet, or mobile devices, or different browsers and applications. Such features

are specifically grounded in, and overcome problems with data efficiency and flexibility specifically arising in, the realm of computerized content generation and display technologies, and are not well-understood, routine, and conventional elements.

43.     For example, the claimed inventions of the '044 patent recite innovative, technical improvements that select and associate symbolic names with defined UI objects (e.g., UI objects for a widget) corresponding to web components of web services based on, for example, data format type, storing information representative of such settings in a database, and building applications, which together with players, generate more uniform, data-efficient content display across different types of devices.

44.     The technology claimed in the '044 patent does not preempt all ways for the computerized generation of code for a display of a device nor any other well-known or prior art technology. For example, the specific, innovative technical improvements do not preempt well-known methods of generating code for a display of a device by programming in HTML or JavaScript code.

45.     Each claim of the '044 patent thus recites a combination of elements sufficient to ensure that the claim amounts to significantly more than a patent on an ineligible concept.

## **BACKGROUND**

46.     On information and belief, Defendant is a provider of website building tools. Defendant manufactures, uses, sells, and/or offers for sale the Squarespace Website Builder platform, which, on information and belief, infringes each of the above-referenced patents.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 6,546,397

47.     Plaintiff incorporates by reference paragraphs 1 to 46 above as if fully set forth herein.

48.     On information and belief, Defendant has infringed the '397 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, directly and/or indirectly.

49.     On information and belief, Defendant has infringed the '397 patent by performing, without authority, one or more of the following acts during relevant time periods: making, using, offering to sell, selling within, and importing into, the United States products and services that practiced the claimed inventions of the '397 patent, including but not limited to the Squarespace website builder platform (the "Accused Instrumentalities").

50.     The Accused Instrumentalities infringed at least claim 1 of the '397 patent through a combination of features that collectively practiced each limitation of claim 1. By way of example, the Accused Instrumentalities provided a website builder, described by Defendant as an "all-in-one platform to build a beautiful website."



https://www.squarespace.com/website-design

13

51.     The Accused Instrumentalities allowed users to produce Internet websites on and for computers having a browser and a virtual machine capable of generating displays. The Accused Instrumentalities supported modern browsers such as Chrome, Firefox, Safari, Microsoft Edge, and Internet Explorer, which used browser engines (virtual machines) capable of generating a display by interpreting and executing code such as JavaScript and HTML to render web pages on a computer.

**Supported browsers**

You can use the following browsers to edit and view your Squarespace site.

**Computer**

- Chrome - PC, Mac, and Linux
- Firefox - PC, Mac, and Linux
- Safari - Mac only (Safari Private Browsing isn't supported for editing your site.)
- Microsoft Edge - PC only
- Internet Explorer - PC only

On touchscreen devices, editing may work the same way as on mobile browsers, depending on the device type and browser size.

**Mobile**

- You can edit many parts of your site on Chrome in Android and Safari in iOS and iPadOS.
- Squarespace sites are optimized for viewing in Chrome and Safari's mobile browsers.
- Use the Squarespace mobile apps for areas that don't yet support mobile editing.
- To learn more about using Squarespace on mobile, visit Editing your site on mobile devices

https://support.squarespace.com/hc/en-us/articles/205815548-Supported-browsers

52.     The Accused Instrumentalities provided for the web building process to start by the selection of one of various layouts or starter layouts, which comprise blocks, as shown in the examples below.

14





53.    The blocks contained text, image, or other content, and could be modified and customized through a menu having a user selectable panel of settings presented to the user describing various elements for the content. In a panel for editing text, for example, a user could modify paragraph styles, as well as text to be in bold or italics. In the example below, the word "Specifically" is modified to be displayed in italics, and display in accordance with the selected setting is generated substantially contemporaneously with the selection thereof. On information and belief, this functionality was present during relevant time periods of infringement.

---

[1] Unless otherwise noted, the images presented in this Complaint were generated for investigative purposes by testing the Accused Instrumentalities on https://www.hubspot.com/.



54.     As another example, a user could select an image and add a caption to the selected image. As shown below, when an image is selected to be displayed and the sentence "A test image is used for test" is added as the image caption, a display in accordance with the selected settings is generated substantially contemporaneously with the selection thereof. On information and belief, this functionality was present during relevant time periods of infringement.



55.     After selection of the desired settings, the user could click on "Save" to store information representative of the selected settings in a database. As indicated below, data for Squarespace websites, which comprised JSON API, were stored in Squarespace servers and data centers (i.e., databases) across the United States, with images and other static assets being served via multiple geographically distributed content delivery networks (CDNs).

# Where does Squarespace store my data?

Last updated September 18, 2017

We store your data in multiple Tier III data centers across the United States. We serve images and other static assets via multiple geographically distributed content delivery networks (CDNs). This system ensures that the data in each page view is served from the data center closest to the visitor's location.

All Squarespace sites are hosted across our private cloud with full redundancy. If a primary service fails, we can switch to a backup service. Our Operations team monitors Squarespace sites 24x7 and is ready to respond to incidents within minutes of detecting an anomaly.

https://support.squarespace.com/hc/en-us/articles/115012540827-Where-does-Squarespace-store-my-data-

56.      In the example below, an image is configured by adding the caption "A test image is used for test." Upon entry of the caption text, a "SaveItenField" POST is sent to a Squarespace server at https://prism-cello-a2tt.squarespace.com/api/commondata/SaveItemField so that the caption "A test image is used for test" is stored in the Squarespace database as the image setting. The form data, which comprises JSON data, contains the itemId "5f1f1d93173b882549f3afbd," the field "altText," and the value "A test image is used for test." On information and belief, this functionality was present during relevant time periods of infringement.



57.    A Squarespace website was generated in part by retrieving the information for the user selected settings stored in the Squarespace database. In the example below, if a user selected setting such as an image with the caption "A test image is used for test" is previously saved in the Squarespace database, a browser can load the website by sending a "test-page-1" GET requesting the saved image and image caption "A test image is used for test," which are

18

downloaded from Squarespace server (URL: https://prism-cello-a2tt.squarespace.com/test-page-1). Specifically, as in the example below, Squarespace's server requests the image file to be downloaded from a CDN server (URL: https://images.squarespace-cdn.com). On information and belief, this functionality was present during relevant time periods of infringement.





58.     The Accused Instrumentalities built the user's website comprising one or more web pages from data stored in the database and run time files that used the data stored in the database to generate commands for the browser engine to display the one or more web pages. In the example below, the Accused Instrumentalities provide a sample website which consists of four web pages: Test Page 1, Shop, Our Story, Journal, and Contact. On information and belief, this functionality was present during relevant time periods of infringement.



59.     The Accused Instrumentalities relied on a browser build engine to generate a website comprising one or more web pages based on objects and style data extracted from at least a portion of the Accused Instrumentalities' database and at least one run time file. As shown in the example below, the Accused Instrumentalities' HTML file fetched from the Squarespace server embeds various run time files (including CSS files, and Javascript files). When the browser build engine parses the HTML file, the web browsers also make a request (GET method) to fetch the

embedded CSS and Javascript run time files. On information and belief, this functionality was present during relevant time periods of infringement.



60.     On information and belief, the Accused Instrumentalities fetched HTML (*.html) files, CSS (*.css) files, and Javascript (*.js) files from the Squarespace server and converted them into a working website to display. Specifically, the HTML files were used to create structural elements of the website by controlling the layout of the content and providing structure for web page design. The CSS files were used to stylize the website by applying style to the webpage elements and improving the visual displays of the web pages. The Javascript files were used to increase interactivity between the user and the web site by adding interactivity to a web page and handling complex functions and features. In the exemplary screenshot below, the Accused Instrumentalities' source code, such as the HTML files and run time files (including CSS files, and Javascript files), are fetched from the Squarespace server by using GET method. On information and belief, this functionality was present during relevant time periods of infringement.



61.     The presence of the above referenced features was demonstrated, by way of example, by testing the Accused Instrumentalities for investigative purposes on https://www.squarespace.com/, and by reference to publicly available information, including https://www.squarespace.com/, https://www.squarespace.com/website-design, https://developers.squarespace.com/, https://www.squarespace.com/how-to/build-a-website, https://support.squarespace.com/hc/en-us/articles/205815548-Supported-browsers, https://support.squarespace.com/hc/en-us/articles/115012540827-Where-does-Squarespace-store-my-data-, and https://developers.squarespace.com/template-overview. On information and belief, the above referenced features were present during relevant time periods of infringement.

62.     On information and belief, Defendant had knowledge of the '397 patent and its infringement thereof at least as early as April 9, 2019, and no later than August 31, 2020, when Plaintiff provided notices of the '397 patent and Defendant's infringement of the '397 patent.

63.     On information and belief, Defendant has contributed to the infringement of the '397 patent because Defendant knew that the infringing aspects of its infringing products and

services, including but not limited to the Accused Instrumentalities, were made for use in an infringement, and were not staple articles of commerce suitable for substantial non-infringing uses.

64.   On information and belief, Defendant has induced the infringement of the '397 patent, with knowledge of the '397 patent and that its acts, including without limitation using, offering to sell, selling within, and importing into the United States, the Accused Instrumentalities, would aid and abet and induce infringement by customers, clients, partners, developers, and end users of the foregoing.

65.   In particular, Defendant's actions that aided and abetted others such as customers, clients, partners, developers, and end users to infringe included advertising and distributing the Accused Instrumentalities, and providing instructional materials, training, and other services regarding the Accused Instrumentalities. Defendant actively encouraged the adoption of the Accused Instrumentalities and provided support sites for the vast network of developers working with the Accused Instrumentalities, emphasizing the customizable and user-friendly nature of the Accused Instrumentalities and explaining that users could "[s]elect from any of our industry-leading website templates to best fit your personal style and professional needs… Explore which tools you want to add—whether it's setting up an online store, booking services, or adding your favorite third-party extensions," and "[w]e've got you covered, 24/7. When you create a website with Squarespace, you get free unlimited hosting, top-of-the-line security, and dependable resources to help you succeed. You can count on personalized support around the clock by email, live chat, or by joining a live webinar." (*See, e.g.*, https://www.squarespace.com/.) On information and belief, Defendant engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Defendant had actual knowledge of the

'397 patent and knowledge that their acts were inducing infringement of the '397 patent since at least the date Defendant received notice that its activities infringed the '397 patent.

66.     Defendant's acts of infringement caused damage to Plaintiff, and Plaintiff is entitled to recover damages from Defendant in an amount subject to proof at trial.

67.     On information and belief, Defendant has acted with disregard of Plaintiff's patent rights, without any reasonable basis for doing so, and has willfully infringed the '397 patent.

68.     The foregoing is illustrative of Defendant's infringement of the '397 patent. Plaintiff reserves the right to identify additional claims and Accused Instrumentalities in accordance with the Court's local rules and applicable scheduling orders.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 7,594,168

69.     Plaintiff incorporates by reference paragraphs 1 to 68 above as if fully set forth herein.

70.     On information and belief, Defendant has infringed and is infringing the '168 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, directly and/or indirectly.

71.     On information and belief, Defendant has infringed and is infringing the '168 patent by performing, without authority, one or more of the following acts: making, using, offering to sell, selling within, and importing into, the United States products and services that practice the claimed inventions of the '397 patent, including but not limited to the Squarespace Website Builder platform and related mobile application (the "Accused Instrumentalities").

72.     The Accused Instrumentalities infringe at least claim 1 of the '168 patent through a combination of features that collectively practice each limitation of claim 1. By way of example,

the Accused Instrumentalities provide a website builder system for building websites, described by Defendant as an "all-in-one platform to build a beautiful online website."



https://www.squarespace.com/website-design

73.    The Accused Instrumentalities includes a server that hosts and supports the website builder.



https://support.squarespace.com/hc/en-us/articles/115012540827-Where-does-Squarespace-store-my-data-

74.     The server comprises a build engine configured to accept user input to create a website comprising a plurality of web pages that each include a plurality of objects. For example, the build engine can accept user input for various features under the "Design" tab, including text font, colors, images and buttons.



75.     A user can associate a style for a button, such as "Solid" or "Outline," as well as shape and padding.



76.     A user can also input styles for images, such as width, position, and text alignment.



77.     Inputs for animations, such as Fade, Scale, Slide and Clip options, can then be applied to website elements such as buttons and images. These options represent styles defining transformations and time lines for the website elements.



78.     For example, a user can set a transformation where a caption appears when the user's cursor is hovered over an image, as shown below.



79.     The Accused Instrumentalities are configured to produce a database with a multidimensional array comprising the objects that comprise the website. For example, user inputs for websites are stored in MySQL and MongoDB databases, which comprise multidimensional array databases.



https://www.quora.com/What-is-Squarespaces-architecture-like

80.     The JSON dataset used to render Squarespace web pages is multidimensional in nature, and for each object the JSON dataset includes object style, object identifiers, and an indication of the web page that the object is part of. This data is provided to Squarespace's server, accessible to a web browser to generate a website with the user inputs. In the exemplary screenshot below, an image object is renamed to "MyTestImage.jpg", then a JSON dataset "item" is sent to the Squarespace server via a "SavedItemField" POST request method to update the filename of the image object stored in Squarespace's server. From "Preview" of the JSON dataset "item", the JSON dataset includes the updated "filename" of the image object and other object styles, object identifiers, and object features.

29





https://developers.squarespace.com/what-is-json-t

81.   A web browser with access to a runtime engine can then generate the user configured website including the user input objects and style data extracted from the database.

82.   The presence of the above referenced features was demonstrated, by way of example, by testing the Accused Instrumentalities for investigative purposes on https://www.squarespace.com/, and by reference to publicly available information, including https://www.squarespace.com/,                    https://www.squarespace.com/website-design, https://developers.squarespace.com/,      https://www.squarespace.com/how-to/build-a-website, https://support.squarespace.com/hc/en-us/articles/205815548-Supported-browsers, https://support.squarespace.com/hc/en-us/articles/115012540827-Where-does-Squarespace-store-my-data-,                    https://developers.squarespace.com/templating-basics, https://developers.squarespace.com/what-is-json-t,                              and https://developers.squarespace.com/template-overview.

83.   On information and belief, Defendant has had knowledge of the '168 patent and its infringement thereof at least as early as April 9, 2019, and no later than August 31, 2020, when Plaintiff provided notices of the '168 patent and Defendant's infringement of the '168 patent.

Furthermore, Defendant has been aware of the '168 patent and its infringement thereof since at least the filing of this complaint.

84.     On information and belief, Defendant has contributed and is contributing to the infringement of the '168 patent because Defendant knows that the infringing aspects of its infringing products and services, including but not limited to the Accused Instrumentalities, are made for use in an infringement, and are not staple articles of commerce suitable for substantial non-infringing uses.

85.     On information and belief, Defendant has induced and is inducing the infringement of the '168 patent, with knowledge of the '168 patent and that its acts, including without limitation using, offering to sell, selling within, and importing into the United States, the Accused Instrumentalities, would aid and abet and induce infringement by customers, clients, partners, developers, and end users of the foregoing.

86.     In particular, Defendant's actions that aid and abet others such as customers, clients, partners, developers, and end users to infringe include advertising and distributing the Accused Instrumentalities, and providing instructional materials, training, and other services regarding the Accused Instrumentalities. Defendant actively encourages the adoption of the Accused Instrumentalities and provides support sites for the vast network of developers working with the Accused Instrumentalities, emphasizing the customizable and user-friendly nature of the Accused Instrumentalities and explaining that users can "[s]elect from any of our industry-leading website templates to best fit your personal style and professional needs… Explore which tools you want to add—whether it's setting up an online store, booking services, or adding your favorite third-party extensions," and "[w]e've got you covered, 24/7. When you create a website with Squarespace, you get free unlimited hosting, top-of-the-line security, and dependable resources to

help you succeed. You can count on personalized support around the clock by email, live chat, or by joining a live webinar." (*See, e.g.*, https://www.squarespace.com/.) On information and belief, Defendant has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Defendant has had actual knowledge of the '168 patent and knowledge that their acts were inducing infringement of the '168 patent since at least the date Defendant received notice that its activities infringed the '168 patent.

87.     Defendant's acts of infringement have caused damage to Plaintiff, and Plaintiff is entitled to recover damages from Defendant in an amount subject to proof at trial.

88.     Defendant's infringement of Plaintiff's rights under the '168 patent will continue to damage Plaintiff's business, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

89.     On information and belief, Defendant has acted with disregard of Plaintiff's patent rights, without any reasonable basis for doing so, and has willfully infringed and does willfully infringe the '168 patent.

90.     The foregoing is illustrative of Defendant's infringement of the '168 patent. Plaintiff reserves the right to identify additional claims and Accused Instrumentalities in accordance with the Court's local rules and applicable scheduling orders.

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 9,063,755

91.     Plaintiff incorporates by reference paragraphs 1 to 90 above as if fully set forth herein.

92.     On information and belief, Defendant has infringed and is infringing the '755 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, directly and/or indirectly.

93.     On information and belief, Defendant has infringed and is infringing the '755 patent by performing, without authority, one or more of the following acts: making, using, offering to sell, selling within, and importing into, the United States products and services that practice the claimed inventions of the '755 patent, including but not limited to the Squarespace Website Builder platform and related mobile application (the "Accused Instrumentalities").

94.     The Accused Instrumentalities infringe at least claim 12 of the '755 patent through a combination of features that collectively practice each claimed limitation of claim 12. By way of example, the Accused Instrumentalities include a website builder system for building websites, described by Defendant as an "all-in-one platform to build a beautiful online website."

**How to design a website**

GET STARTED →

01.  Choose from one of Squarespace's best-in-class website templates.

02.  Use our website builder to customize pages, menus, and navigation.

03.  Change fonts, imagery, and margins with the built-in style kit.

04.  Preview your responsive web design on mobile devices.

05.  Create a logo for your brand with our free logo maker.

06.  Add a custom domain to your website.

**Squarespace is the all-in-one platform to build a beautiful website.**

START A FREE TRIAL

https://www.squarespace.com/website-design

95.     The Accused Instrumentalities utilize a registry of web components related to inputs and outputs of web services, with each web component including a plurality of corresponding symbolic names for inputs and outputs. Web services include third-party

"extensions" such as Instagram, Google Map, Facebook and PayPal that may be added to a user's content.



https://www.squarespace.com/extensions/home

https://www.squarespace.com/extensions/home

 96. In order to store and transmit data for the third-party extensions, the Accused Instrumentalities employ JSON data to evoke web components for the web services, and to communicate inputs and outputs for the various web services. JSON data comprise key/value pairs that are essentially character strings (i.e., symbolic names) with no persistent address or pointer.

# What is JSON?

JSON, or JavaScript Object Notation, is a minimal, readable format for structuring data. It is used primarily to transmit data between a server and web application, as an alternative to XML. Squarespace uses JSON to store and organize site content created with the CMS.

## Example

Append `?format=json-pretty` to the URL of any page on your Squarespace site and you'll be able to view the JSON data for the site.

## Keys and Values

The two primary parts that make up JSON are keys and values. Together they make a key/value pair.

- **Key:** A key is always a string enclosed in quotation marks.
- **Value:** A value can be a string, number, boolean expression, array, or object.
- **Key/Value Pair:** A key value pair follows a specific syntax, with the key followed by a colon followed by the value. Key/value pairs are comma separated.

Let's take one line from the JSON sample above and identify each part of the code.

```
"foo" : "bar"
```

This example is a key/value pair. The key is "foo" and the value is "bar".

## Types of Values

- **Array:** An associative array of values.
- **Boolean:** True or false.
- **Number:** An integer.
- **Object:** An associative array of key/value pairs.
- **String:** Several plain text characters which usually form a word.

https://developers.squarespace.com/what-is-json

97. The registry for the Accused Instrumentalities also includes addresses for the web services where the input symbolic names and output symbolic names can be sent to and received from. For example, the screenshot below shows a request URL including an address of the Google Maps web service.



98.    By way of example, the Accused Instrumentalities include a method that defines a UI object for the Google Map web service for presentation on the display when a "Map Block" is added. Specifically, UI objects for web components such as a map image, zoom in and zoom out buttons, or text fields for a street, city, or zip code of an address may be defined for the Google Map web service.

## Map Blocks

Last updated June 9, 2020

Use Map Blocks to embed Google Maps with a location pin on your site. This is a great way to display your business or event's location. It's popular to add Map Blocks to Contact pages.

SECTIONS

Add a Map Block
Add a location pin
Change the design
Resize the block (computer only)
How visitors use Map Blocks
FAQ

## Add a Map Block

To add a Map Block:

1. Edit a page or post, click an insert point, and select **Map** from the menu. For help, visit Adding content with blocks.
2. In the **Address** tab of the Map Block, add a location pin.
3. Use the **Design** tab to customize the color and appearance of the map.
4. Click **Apply** to save your changes.

https://support.squarespace.com/hc/en-us/articles/206543867-Map-Blocks



99.     When a UI object is defined, a symbolic name (e.g., JSON data) from the web component corresponding to the defined UI object is selected and associated with the defined UI object. In the exemplary screenshots below, a Map Block for the Google Maps web service is added to the "Test Page 1" web page. An "Address" tab of the Map Block includes various UI objects, such as text fields for business name, address, city, state, and zip code of an address. These UI objects are used to accept the address input from a user. For example, when the user enters an address, the "Address" tab of the Map Block will provide a list of recommended addresses based on user's input, which are provided by the Google Maps web server. These recommended addresses are formatted in JSON dataset and associated with the text fields in the "Address" tab of the Map Block.



100.    The Accused Instrumentalities then produce a device-independent application that includes the JSON data, as well as standard HTML, CSS and Javascript code. The application is executed on a device together with a device-dependent player, such as a browser engine for a browser, or a display renderer for a particular operating system. *See, e.g., Shopify Inc. v. Express Mobile, Inc.*, Case No. 1:19-cv-00439-RGA, D. Del., D.I. 137.

# Template Overview

Each Squarespace Template is made up of a series of predefined folders and files structured very similarly to a static website. This section will explain the purpose of each file and how they are organized into folders.

## Languages and Filetypes

In addition to standard front-end code languages (HTML, CSS, JavaScript), our templates are powered by the following languages and pre-processors:

### JSON Template

Most template files are written in JSON Template. It is an easy to use, easy to read, minimalist template language. These are templates for HTML so they can be opened as HTML files in your editor.

### LESS CSS

Template CSS files (.css or .less) are processed through LESS. LESS extends CSS with dynamic behavior such as variables, mixins, operations and functions.

https://developers.squarespace.com/template-overview

### Putting it All Together

Combining these simple constructs together with your HTML, CSS and JavaScript is how a Squarespace Template is built, using the CMS to provide the data and information that we render in our template files.

REFERENCE: JSON-TEMPLATE REFERENCE WIKI

https://developers.squarespace.com/what-is-json-t

101.    Such features allow the generation of the content defined in the device-independent application together with a device-independent player in different kinds of devices, such as a PC, tablet, or mobile device, or different operating systems or applications. For example, the screenshots below show that the same Map Block can be executed with device-dependent players for a PC device and a mobile device.





102.    When the application and player are executed on a device to present the Map

Block, a user can enter an input value for the Google Maps web service that is transmitted with a

corresponding input symbolic name. For example, the Accused Instrumentalities can accept an

input value such as a street address, a zip code for an address, or a zoom-in click from a user into

the Map Block, and a corresponding input symbolic name associated with the input value is transmitted to the Google Map web service through an HTTP request protocol, such as a POST or GET method call. In the exemplary screenshots below, an input zip code "10014" is associated with a symbolic name "4s" to form a string "4s10014." The formed string, along with other query string parameters (e.g., country "7sUS" and map display language "9sen"), is transmitted to the Google Maps web server "maps.googleapis.com" via a HTTP GET request method for querying the map area of the said zip code.



103.    The input symbolic name is then utilized by the Google Map web service to generate an output value with an associated output symbolic name. The player then provides instructions to the display of the device to present the output value in the Map Block. For example, when a user enters a zip code input into the Map Block, the Google Map web service will generate and transmit a map image output, through corresponding JSON data.



104.    The presence of the above referenced features was demonstrated, by way of example, by testing the Accused Instrumentalities for investigative purposes on https://www.squarespace.com/, and by reference to publicly available information, including https://www.squarespace.com/,                                    https://www.squarespace.com/website-design, https://developers.squarespace.com/,        https://www.squarespace.com/how-to-build-a-website, https://support.squarespace.com/hc/en-us/articles/205815548-Supported-browsers, https://support.squarespace.com/hc/en-us/articles/115012540827-Where-does-Squarespace-store-my-data-,                            https://developers.squarespace.com/templating-basics, https://developers.squarespace.com/what-is-json-t, https://www.squarespace.com/extensions/home,            https://support.squarespace.com/hc/en-us/articles/206543867-Map-Blocks,        https://developers.squarespace.com/template-overview, https://developers.google.com/maps/documentation/javascript/geocoding,                        and https://developers.squarespace.com/template-overview.

105.    On information and belief, Defendant has had knowledge of the '755 patent and its infringement thereof at least as early as April 9, 2019, when Plaintiff provided notice of the '287 and '044 patents, and Defendant's infringement thereof, both of which identify on their face the '755 patent, and its issuance from a parent patent application of the '287 and '044 patents, and no later than August 31, 2020, when Plaintiff provided notice of the '755 patent, and Defendant's

infringement thereof. Furthermore, Defendant has been aware of the '755 patent and its infringement thereof since at least the filing of this complaint.

106.   On information and belief, Defendant has contributed and is contributing to the infringement of the '755 patent because Defendant knows that the infringing aspects of its infringing products and services, including but not limited to the Accused Instrumentalities, are made for use in an infringement, and are not staple articles of commerce suitable for substantial non-infringing uses.

107.   On information and belief, Defendant has induced and is inducing the infringement of the '755 patent, with knowledge of the '755 patent and that its acts, including without limitation using, offering to sell, selling within, and importing into the United States, the Accused Instrumentalities, would aid and abet and induce infringement by customers, clients, partners, developers, and end users of the foregoing.

108.   In particular, Defendant's actions that aid and abet others such as customers, clients, partners, developers, and end users to infringe include advertising and distributing the Accused Instrumentalities, and providing instructional materials, training, and other services regarding the Accused Instrumentalities. Defendant actively encourages the adoption of the Accused Instrumentalities and provides support sites for the vast network of developers working with the Accused Instrumentalities, emphasizing the customizable and user-friendly nature of the Accused Instrumentalities and explaining that users can "[s]elect from any of our industry-leading website templates to best fit your personal style and professional needs… Explore which tools you want to add—whether it's setting up an online store, booking services, or adding your favorite third-party extensions," and "[w]e've got you covered, 24/7. When you create a website with Squarespace, you get free unlimited hosting, top-of-the-line security, and dependable resources to

help you succeed. You can count on personalized support around the clock by email, live chat, or by joining a live webinar." (*See, e.g.*, https://www.squarespace.com/.) On information and belief, Defendant has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Defendant has had actual knowledge of the '755 patent and knowledge that their acts were inducing infringement of the '755 patent since at least the date Defendant received notice that its activities infringed the '755 patent.

109.     Defendant's acts of infringement have caused damage to Plaintiff, and Plaintiff is entitled to recover damages from Defendant in an amount subject to proof at trial.

110.     Defendant's infringement of Plaintiff's rights under the '755 patent will continue to damage Plaintiff's business, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

111.     On information and belief, Defendant has acted with disregard of Plaintiff's patent rights, without any reasonable basis for doing so, and has willfully infringed and does willfully infringe the '755 patent.

112.     The foregoing is illustrative of Defendant's infringement of the '755 patent. Plaintiff reserves the right to identify additional claims and Accused Instrumentalities in accordance with the Court's local rules and applicable scheduling orders.

## COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 9,471,287

113.     Plaintiff incorporates by reference paragraphs 1 to 112 above as if fully set forth herein.

114.     On information and belief, Defendant has infringed and is infringing the '287 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, directly and/or indirectly.

115.    On information and belief, Defendant has infringed and is infringing the '287 patent by performing, without authority, one or more of the following acts: making, using, offering to sell, selling within, and importing into, the United States products and services that practice the claimed inventions of the '287 patent, including but not limited to the Squarespace Website Builder platform and related mobile application (the "Accused Instrumentalities").

116.    The Accused Instrumentalities infringe at least claim 15 of the '287 patent through a combination of features that collectively practice each claimed limitation of claim 15. By way of example, the Accused Instrumentalities provide a website builder platform for building websites, described by Defendant as an "all-in-one platform to build a beautiful online website."



https://www.squarespace.com/website-design

117.    The Accused Instrumentalities display content through a device that has a device-dependent player, such as a browser engine for a specific browser, or a display renderer for different operating systems. For example, the Accused Instrumentalities support modern browsers such as Microsoft Internet Explorer, Mozilla's Firefox, Apple Safari, Google Chrome, and Opera.

## Supported browsers

You can use the following browsers to edit and view your Squarespace site.

### Computer

- Chrome - PC, Mac, and Linux
- Firefox - PC, Mac, and Linux
- Safari - Mac only (Safari Private Browsing isn't supported for editing your site.)
- Microsoft Edge - PC only
- Internet Explorer - PC only

On touchscreen devices, editing may work the same way as on mobile browsers, depending on the device type and browser size.

### Mobile

- You can edit many parts of your site on Chrome in Android and Safari in iOS and iPadOS.
- Squarespace sites are optimized for viewing in Chrome and Safari's mobile browsers.
- Use the Squarespace mobile apps for areas that don't yet support mobile editing.
- To learn more about using Squarespace on mobile, visit Editing your site on mobile devices

https://support.squarespace.com/hc/en-us/articles/205815548-Supported-browsers

118.     The Accused Instrumentalities define a UI object for presentation on the display, where the UI object corresponds to a web component included in a registry of one or more web components selected from an input of a web service and an output of a web service. For example, the Accused Instrumentalities can add third party "extensions" (i.e., web services) such as Instagram, Google Map, Facebook and PayPal to a user's content.

47





https://www.squarespace.com/extensions/home

      119.    By way of example, when a "Map Block" third-party extension for Google Maps is added, UI objects for input and output web components such as a map image, zoom in and zoom out buttons, or text fields for a street, city, or zip code of an address are defined for the Google Map web service.

## Map Blocks

Last updated June 9, 2020

Use Map Blocks to embed Google Maps with a location pin on your site. This is a great way to display your business or event's location. It's popular to add Map Blocks to Contact pages.

SECTIONS

Add a Map Block

Add a location pin

Change the design

Resize the block (computer only)

How visitors use Map Blocks

FAQ

## Add a Map Block

To add a Map Block:

1. Edit a page or post, click an insert point, and select **Map** from the menu. For help, visit Adding content with blocks.
2. In the **Address** tab of the Map Block, add a location pin.
3. Use the **Design** tab to customize the color and appearance of the map.
4. Click **Apply** to save your changes.

https://support.squarespace.com/hc/en-us/articles/206543867-Map-Blocks

120.    In order to store and transmit data for the third-party extensions, the Accused Instrumentalities employ JSON data to evoke web components for the web services, and to communicate inputs and outputs for the various web services. JSON data comprise key/value pairs that are essentially character strings (i.e., symbolic names) with no persistent address or pointer.

# What is JSON?

JSON, or JavaScript Object Notation, is a minimal, readable format for structuring data. It is used primarily to transmit data between a server and web application, as an alternative to XML. Squarespace uses JSON to store and organize site content created with the CMS.

## Example

Append `?format=json-pretty` to the URL of any page on your Squarespace site and you'll be able to view the JSON data for the site.

## Keys and Values

The two primary parts that make up JSON are keys and values. Together they make a key/value pair.

- **Key:** A key is always a string enclosed in quotation marks.
- **Value:** A value can be a string, number, boolean expression, array, or object.
- **Key/Value Pair:** A key value pair follows a specific syntax, with the key followed by a colon followed by the value. Key/value pairs are comma separated.

Let's take one line from the JSON sample above and identify each part of the code.

```
"foo" : "bar"
```

This example is a key/value pair. The key is "foo" and the value is "bar".

## Types of Values

- **Array:** An associative array of values.
- **Boolean:** True or false.
- **Number:** An integer.
- **Object:** An associative array of key/value pairs.
- **String:** Several plain text characters which usually form a word.

https://developers.squarespace.com/what-is-json

121.   The Accused Instrumentalities' web components, and corresponding symbolic names (e.g., JSON data) for inputs and outputs for the web services, are located in a registry at a Squarespace data center. The JSON data, which constitutes character strings with no persistent

address or pointer, is used to evoke web components for the web services, and to communicate inputs and outputs for the various web services.

## Where does Squarespace store my data?

Last updated September 18, 2017

We store your data in multiple Tier III data centers across the United States. We serve images and other static assets via multiple geographically distributed content delivery networks (CDNs). This system ensures that the data in each page view is served from the data center closest to the visitor's location.

All Squarespace sites are hosted across our private cloud with full redundancy. If a primary service fails, we can switch to a backup service. Our Operations team monitors Squarespace sites 24x7 and is ready to respond to incidents within minutes of detecting an anomaly.

https://support.squarespace.com/hc/en-us/articles/115012540827-Where-does-Squarespace-store-my-data-

122.     The registry for the Accused Instrumentalities also includes addresses for the web services. For example, the screenshot below shows a request URL including an address of the Google Maps web service.



123.     When a Google Map "Map Block" is added to a Squarespace website, UI objects for web components for the Map Block, such text fields for business name, address, city, state, and

zip code of an address, are automatically selected by the Accused Instrumentalities as preferred UI objects.



124.    When a UI object is so defined, a symbolic name (e.g., JSON data) from the web component corresponding to the defined UI object is selected and associated with the defined UI object. The symbolic name has an associated data format class type corresponding to a subclass of UI objects that support the data format type of the symbolic name and has the preferred UI object. For example, when a Map Block for the Google Maps web service is added to a "Test Page 1" web page, UI objects in the "Address" tab of the Map Block, such as text fields for business name, address, city, state, and zip code of an address, are used to accept the address input from user. When a user enters an address, the "Address" tab of the Map Block will provide a list of recommended addresses based on user's input, so that the user can select one address to automatically fill in the text fields of the "Address" tab. These recommended addresses are formatted in JSON dataset and are associated with the "Address" tab of the Map Block. For

example, in the first component (with tag "0") of "address_components", "long_name" and "short_name" are symbolic names (keys in JSON dataset) which are associated with "225" (values in JSON dataset). The symbolic name "type" (key in JSON dataset) is associated with the "street_number" (value in JSON dataset). These symbolic names are sent from the Google Maps web server as a query response to a query request triggered by the user's entered address.



125.    The Accused Instrumentalities then produce a device-independent application that includes the JSON data, as well as standard HTML, CSS and Javascript code. The application is executed on a device together with a device-dependent player, such as a browser engine for a browser, or a display renderer for a particular operating system. See, e.g., *Shopify Inc. v. Express Mobile, Inc.,* Case No. 1:19-cv-00439-RGA, D. Del., D.I. 137.

# Template Overview

Each Squarespace Template is made up of a series of predefined folders and files structured very similarly to a static website. This section will explain the purpose of each file and how they are organized into folders.

## Languages and Filetypes

In addition to standard front-end code languages (HTML, CSS, JavaScript), our templates are powered by the following languages and pre-processors:

### JSON Template

Most template files are written in JSON Template. It is an easy to use, easy to read, minimalist template language. These are templates for HTML so they can be opened as HTML files in your editor.

### LESS CSS

Template CSS files (.css or .less) are processed through LESS. LESS extends CSS with dynamic behavior such as variables, mixins, operations and functions.

https://developers.squarespace.com/template-overview

### Putting it All Together

Combining these simple constructs together with your HTML, CSS and JavaScript is how a Squarespace Template is built, using the CMS to provide the data and information that we render in our template files.

REFERENCE: JSON-TEMPLATE REFERENCE WIKI

https://developers.squarespace.com/what-is-json-t

126.   Such features allow the generation of the content defined in the device-independent application together with a device-independent player in different kinds of devices, such as a PC, tablet, or mobile device, or different operating systems or applications. For example, the screenshots below show that the same Map Block can be executed with device-dependent players for a PC device and a mobile device.





127.    When the application and player are executed on a device to present the Map

Block, a user can enter an input value for the Google Maps web service that is transmitted with a

corresponding input symbolic name. For example, the Accused Instrumentalities can accept an

input value such as a street address, a zip code for an address, or a zoom-in click from a user into

the Map Block, and a corresponding input symbolic name associated with the input value is transmitted to the Google Map web service through an HTTP request protocol, such as a POST or GET method call. In the exemplary screenshots below, an input zip code "10014" is associated with a symbolic name "4s" to form a string "4s10014." The formed string, along with other query string parameters (e.g., country "7sUS" and map display language "9sen"), is transmitted to the Google Maps web server "maps.googleapis.com" via a HTTP GET request method for querying the map area of the said zip code.



128.    The input symbolic name is then utilized by the Google Map web service to generate an output value with an associated output symbolic name. The player then provides instructions to the display of the device to present the output value in the Map Block. For example, when a user enters a zip code input into the Map Block, the Google Map web service will generate and transmit a map image output, through corresponding JSON data.



129.    The presence of the above referenced features was demonstrated, by way of example, by testing the Accused Instrumentalities for investigative purposes on https://www.squarespace.com/, and by reference to publicly available information, including https://www.squarespace.com/,                    https://www.squarespace.com/website-design, https://developers.squarespace.com/,      https://www.squarespace.com/how-to/build-a-website, https://support.squarespace.com/hc/en-us/articles/205815548-Supported-browsers, https://support.squarespace.com/hc/en-us/articles/115012540827-Where-does-Squarespace-store-my-data-,                    https://developers.squarespace.com/templating-basics, https://developers.squarespace.com/what-is-json-t, https://www.squarespace.com/extensions/home,           https://support.squarespace.com/hc/en-us/articles/206543867-Map-Blocks,      https://developers.squarespace.com/template-overview, https://developers.google.com/maps/documentation/javascript/geocoding,                    and https://developers.squarespace.com/template-overview.

130.    On information and belief, Defendant has had knowledge of the '287 patent and its infringement thereof at least as early as April 9, 2019, and no later than August 31, 2020, when Plaintiff provided notices of the '287 patent and Defendant's infringement of the '287 patent. Furthermore, Defendant has been aware of the '287 patent and its infringement thereof since at least the filing of this complaint.

131.    On information and belief, Defendant has contributed and is contributing to the infringement of the '287 patent because Defendant knows that the infringing aspects of its infringing products and services, including but not limited to the Accused Instrumentalities, are made for use in an infringement, and are not staple articles of commerce suitable for substantial non-infringing uses.

132.    On information and belief, Defendant has induced and is inducing the infringement of the '287 patent, with knowledge of the '287 patent and that its acts, including without limitation using, offering to sell, selling within, and importing into the United States, the Accused Instrumentalities, would aid and abet and induce infringement by customers, clients, partners, developers, and end users of the foregoing.

133.    In particular, Defendant's actions that aid and abet others such as customers, clients, partners, developers, and end users to infringe include advertising and distributing the Accused Instrumentalities, and providing instructional materials, training, and other services regarding the Accused Instrumentalities. Defendant actively encourages the adoption of the Accused Instrumentalities and provides support sites for the vast network of developers working with the Accused Instrumentalities, emphasizing the customizable and user-friendly nature of the Accused Instrumentalities and explaining that users can "[s]elect from any of our industry-leading website templates to best fit your personal style and professional needs… Explore which tools you want to add—whether it's setting up an online store, booking services, or adding your favorite third-party extensions," and "[w]e've got you covered, 24/7. When you create a website with Squarespace, you get free unlimited hosting, top-of-the-line security, and dependable resources to help you succeed. You can count on personalized support around the clock by email, live chat, or by joining a live webinar." (*See, e.g.*, https://www.squarespace.com/.) On information and belief, Defendant has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Defendant has had actual knowledge of the '287 patent and knowledge that their acts were inducing infringement of the '287 patent since at least the date Defendant received notice that its activities infringed the '287 patent.

134.    Defendant's acts of infringement have caused damage to Plaintiff, and Plaintiff is entitled to recover damages from Defendant in an amount subject to proof at trial.

135.    Defendant's infringement of Plaintiff's rights under the '287 patent will continue to damage Plaintiff's business, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

136.    On information and belief, Defendant has acted with disregard of Plaintiff's patent rights, without any reasonable basis for doing so, and has willfully infringed and does willfully infringe the '287 patent.

137.    The foregoing is illustrative of Defendant's infringement of the '287 patent. Plaintiff reserves the right to identify additional claims and Accused Instrumentalities in accordance with the Court's local rules and applicable scheduling orders.

## COUNT V – INFRINGEMENT OF U.S. PATENT NO. 9,928,044

138.    Plaintiff incorporates by reference paragraphs 1 to 137 above as if fully set forth herein.

139.    On information and belief, Defendant has infringed and is infringing the '044 patent under 35 U.S.C. § 271, either literally and/or under the doctrine of equivalents, directly and/or indirectly.

140.    On information and belief, Defendant has infringed and is infringing the '044 patent by performing, without authority, one or more of the following acts: making, using, offering to sell, selling within, and importing into, the United States products and services that practice the claimed inventions of the '044 patent, including but not limited to the Squarespace Website Builder platform and related mobile application(the "Accused Instrumentalities").

141.    The Accused Instrumentalities infringe at least claim 15 of the '044 patent through a combination of features that collectively practice each limitation of claim 15. By way of example, the Accused Instrumentalities provide a website builder platform for building websites, described by Defendant as an "all-in-one platform to build a beautiful online website."



https://www.squarespace.com/website-design

142.    The Accused Instrumentalities provide a platform for displaying content on a display of a device having a player, such as a browser engine for a specific browser, or a display renderer for different operating systems. For example, the Accused Instrumentalities support modern browsers such as Microsoft Internet Explorer, Mozilla's Firefox, Apple Safari, Google Chrome, and Opera. *See, e.g., Shopify Inc. v. Express Mobile, Inc.*, Case No. 1:19-cv-00439-RGA, D. Del., D.I. 137.

**Supported browsers**

You can use the following browsers to edit and view your Squarespace site.

Computer

- Chrome - PC, Mac, and Linux
- Firefox - PC, Mac, and Linux
- Safari - Mac only (Safari Private Browsing isn't supported for editing your site.)
- Microsoft Edge - PC only
- Internet Explorer - PC only

On touchscreen devices, editing may work the same way as on mobile browsers, depending on the device type and browser size.

Mobile

- You can edit many parts of your site on Chrome in Android and Safari in iOS and iPadOS.
- Squarespace sites are optimized for viewing in Chrome and Safari's mobile browsers.
- Use the Squarespace mobile apps for areas that don't yet support mobile editing.
- To learn more about using Squarespace on mobile, visit Editing your site on mobile devices

https://support.squarespace.com/hc/en-us/articles/205815548-Supported-browsers

143.    The Accused Instrumentalities include a memory for storing symbolic names required for evoking one or more web components each related to a set of inputs and outputs of a web service obtainable over a network. In particular, the Accused Instrumentalities can add third party "extensions" (i.e., web services) such as Instagram, Google Map, Facebook and PayPal to a user's content.





https://www.squarespace.com/extensions/home

144.   In order to store and transmit data for the third-party extensions, the Accused Instrumentalities employ JSON data to evoke web components for the web services, and to communicate inputs and outputs for the various web services. JSON data comprise key/value pairs that are essentially symbolic names constituting character strings with no persistent address or pointer.

# What is JSON?

JSON, or JavaScript Object Notation, is a minimal, readable format for structuring data. It is used primarily to transmit data between a server and web application, as an alternative to XML. Squarespace uses JSON to store and organize site content created with the CMS.

## Example

Append `?format=json-pretty` to the URL of any page on your Squarespace site and you'll be able to view the JSON data for the site.

## Keys and Values

The two primary parts that make up JSON are keys and values. Together they make a key/value pair.

- **Key:** A key is always a string enclosed in quotation marks.
- **Value:** A value can be a string, number, boolean expression, array, or object.
- **Key/Value Pair:** A key value pair follows a specific syntax, with the key followed by a colon followed by the value. Key/value pairs are comma separated.

Let's take one line from the JSON sample above and identify each part of the code.

```
"foo" : "bar"
```

This example is a key/value pair. The key is "foo" and the value is "bar".

## Types of Values

- **Array:** An associative array of values.
- **Boolean:** True or false.
- **Number:** An integer.
- **Object:** An associative array of key/value pairs.
- **String:** Several plain text characters which usually form a word.

https://developers.squarespace.com/what-is-json

145.    Each symbolic name has an associated data format class type corresponding to a subclass of UI objects that support the data format type of the symbolic name and has the preferred UI object. In the example below, the symbolic name "permanently_closed" has an associated "Boolean" data format type and its value is set to "false." For the second address components

63

("address_components" with index number "1"), the symbolic name "long_name" has an associated "String" data format type and its value is set to "Varick Street."



146.    The Accused Instrumentalities store the symbolic names described above, in Squarespace data centers throughout the United States. Data centers conventionally use non-volatile computer memories to store data.

## Where does Squarespace store my data?

Last updated September 18, 2017

We store your data in multiple Tier III data centers across the United States. We serve images and other static assets via multiple geographically distributed content delivery networks (CDNs). This system ensures that the data in each page view is served from the data center closest to the visitor's location.

All Squarespace sites are hosted across our private cloud with full redundancy. If a primary service fails, we can switch to a backup service. Our Operations team monitors Squarespace sites 24x7 and is ready to respond to incidents within minutes of detecting an anomaly.

https://support.squarespace.com/hc/en-us/articles/115012540827-Where-does-Squarespace-store-my-data-

147.    The computer memory of the Accused Instrumentalities also includes addresses for the web services. For example, the screenshot below shows a request URL including an address of the Google Maps web service.



148.    The Accused Instrumentalities define a UI object for presentation on the display, where the UI object corresponds to a web component included in the computer memory, and the web component is selected from a group consisting of an input of a web service and an output of a web service. For example, the Accused Instrumentalities can add a Google Maps "Map Block" as a third-party web service. When this occurs, UI objects for input and output web components such as a map image, zoom in and zoom out buttons, or text fields for a street, city, or zip code of an address are automatically defined and selected for the Google Map web service.

## Map Blocks

Last updated June 9, 2020

Use Map Blocks to embed Google Maps with a location pin on your site. This is a great way to display your business or event's location. It's popular to add Map Blocks to Contact pages.

| SECTIONS |
| --- |
| Add a Map Block |
| Add a location pin |
| Change the design |
| Resize the block (computer only) |
| How visitors use Map Blocks |
| FAQ |

## Add a Map Block

To add a Map Block:

1. Edit a page or post, click an insert point, and select **Map** from the menu. For help, visit Adding content with blocks.
2. In the **Address** tab of the Map Block, add a location pin.
3. Use the **Design** tab to customize the color and appearance of the map.
4. Click **Apply** to save your changes.

https://support.squarespace.com/hc/en-us/articles/206543867-Map-Blocks



149.    When a UI object is so defined, a symbolic name (e.g., JSON data) from the web component corresponding to the defined UI object is selected and associated with the defined UI object. The symbolic name is only available to UI objects that support the defined data format associated with that symbolic name. For example, when a Map Block for the Google Maps web service is added to a "Test Page 1" web page, UI objects in the "Address" tab of the Map Block, such as text fields for business name, address, city, state, and zip code of an address, are used to accept the address input from user. When a user enters an address, the "Address" tab of the Map Block will provide a list of recommended addresses based on the user's input, so that the user can select one address to automatically fill in the text fields of the "Address" tab. These recommended addresses are formatted in JSON dataset and are associated with the "Address" tab of the Map Block. For example, in the first component (with tag "0") of "address_components," "long_name" and "short_name" are symbolic names (keys in JSON dataset) that are associated with "225" (values in JSON dataset). The symbolic name "type" (key in JSON dataset) is associated with the "street_number" (value in JSON dataset). These symbolic names are sent from the Google Maps web server as a query response to a query request triggered by the user's typed address.



150.    The Accused Instrumentalities store information representative of the defined UI object and related settings (e.g., JSON data, along with standard HTML, CSS, and Javascript code) in a database. As described above, data for Squarespace websites are stored in Squarespace servers and data centers (i.e., databases) across the United States, with images and other static assets being served via multiple geographically distributed content delivery networks (CDNs).

151.    To generate a website, the Accused Instrumentalities retrieve the information for the UI objects stored in the Squarespace database. In the exemplary screenshots below, the Accused Instrumentalities retrieve an image stored in the Squarespace database via a HTTP GET request method to generate the "Sample Website," wherein the image is an embedded UI object that a user can further edit, design, and add an animation to.



152.    As described above, the Accused Instrumentalities build an application consisting of web page views using the data stored in the database. In the example below, the Accused Instrumentalities provide a sample website which consists of four web pages: Test Page 1, Shop, Our Story, Journal, and Contact.



153.    A player (e.g., a browser engine or operating system) utilizes the data stored in the database to generate for the display at least a portion of a web page. As shown in the example below, the Accused Instrumentalities' HTML file fetched from the Squarespace server embeds various run time files (including CSS files and Javascript files). When the browser engine parses the HTML file, the web browsers also make a request (GET method) to fetch the embedded CSS and Javascript run time files.



154.    When the application and player are executed on a device to present the Map Block, a user can enter an input value for the Google Maps web service that is transmitted with a corresponding input symbolic name. For example, the Accused Instrumentalities can accept an input value such as a street address, a zip code for an address, or a zoom-in click from a user into the Map Block, and a corresponding input symbolic name associated with the input value is transmitted to the Google Map web service through an HTTP request protocol, such as a POST or GET method call. In the exemplary screenshots below, an input zip code "10014" is associated

with a symbolic name "4s" to form a string "4s10014." The formed string, along with other query string parameters (e.g., country "7sUS" and map display language "9sen"), is transmitted to the Google Maps web server "maps.googleapis.com" via a HTTP GET request method for querying the map area of the said zip code.



155.    The input symbolic name is then utilized by the Google Map web service to generate an output value with an associated output symbolic name. The player then provides instructions to the display of the device to present the output value in the Map Block. For example, when a user enters a zip code input into the Map Block, the Google Map web service will generate and transmit a map image output, through corresponding JSON data.



156.    The presence of the above referenced features was demonstrated, by way of example, by testing the Accused Instrumentalities for investigative purposes on https://www.squarespace.com/, and by reference to publicly available information, including

https://www.squarespace.com/,                       https://www.squarespace.com/website-design,

https://developers.squarespace.com/,       https://www.squarespace.com/how-to/build-a-website,

https://support.squarespace.com/hc/en-us/articles/205815548-Supported-browsers,

https://support.squarespace.com/hc/en-us/articles/115012540827-Where-does-Squarespace-

store-my-data-,                       https://developers.squarespace.com/templating-basics,

https://developers.squarespace.com/what-is-json-t,

https://www.squarespace.com/extensions/home,       https://support.squarespace.com/hc/en-

us/articles/206543867-Map-Blocks,       https://developers.squarespace.com/template-overview,

https://developers.google.com/maps/documentation/javascript/geocoding,       and

https://developers.squarespace.com/template-overview.

157.    On information and belief, Defendant has had knowledge of the '044 patent and

its infringement thereof at least as early as April 9, 2019, and no later than August 31, 2020, when

Plaintiff provided notices of the '044 patent and Defendant's infringement of the '044 patent.

Furthermore, Defendant has been aware of the '044 patent and its infringement thereof since at

least the filing of this complaint.

158.    On information and belief, Defendant has contributed and is contributing to the

infringement of the '044 patent because Defendant knows that the infringing aspects of its

infringing products and services, including but not limited to the Accused Instrumentalities, are

made for use in an infringement, and are not staple articles of commerce suitable for substantial

non-infringing uses.

159.    On information and belief, Defendant has induced and is inducing the

infringement of the '044 patent, with knowledge of the '044 patent and that its acts, including

without limitation using, offering to sell, selling within, and importing into the United States, the

Accused Instrumentalities, would aid and abet and induce infringement by customers, clients, partners, developers, and end users of the foregoing.

160.   In particular, Defendant's actions that aid and abet others such as customers, clients, partners, developers, and end users to infringe include advertising and distributing the Accused Instrumentalities, and providing instructional materials, training, and other services regarding the Accused Instrumentalities. Defendant actively encourages the adoption of the Accused Instrumentalities and provides support sites for the vast network of developers working with the Accused Instrumentalities, emphasizing the customizable and user-friendly nature of the Accused Instrumentalities and explaining that users can "[s]elect from any of our industry-leading website templates to best fit your personal style and professional needs… Explore which tools you want to add—whether it's setting up an online store, booking services, or adding your favorite third-party extensions," and "[w]e've got you covered, 24/7. When you create a website with Squarespace, you get free unlimited hosting, top-of-the-line security, and dependable resources to help you succeed. You can count on personalized support around the clock by email, live chat, or by joining a live webinar." (See, e.g., https://www.squarespace.com/.) On information and belief, Defendant has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Defendant has had actual knowledge of the '044 patent and knowledge that their acts were inducing infringement of the '044 patent since at least the date Defendant received notice that its activities infringed the '044 patent.

161.   Defendant's acts of infringement have caused damage to Plaintiff, and Plaintiff is entitled to recover damages from Defendant in an amount subject to proof at trial.

162.    Defendant's infringement of Plaintiff's rights under the '044 patent will continue to damage Plaintiff's business, causing irreparable harm, for which there is no adequate remedy at law, unless enjoined by this Court.

163.    On information and belief, Defendant has acted with disregard of Plaintiff's patent rights, without any reasonable basis for doing so, and has willfully infringed and does willfully infringe the '044 patent.

164.    The foregoing is illustrative of Defendant's infringement of the '044 patent. Plaintiff reserves the right to identify additional claims and Accused Instrumentalities in accordance with the Court's local rules and applicable scheduling orders.

## PRAYER FOR RELIEF

165.    WHEREFORE, Plaintiff prays for the following relief:

A.      A judgment that U.S. Patent Nos. 6,546,397, 7,594,168, 9,063,755, 9,471,287, and 9,928,044 are valid and enforceable;

B.      A judgment that Defendant has directly infringed, contributorily infringed, and/or induced the infringement of U.S. Patent Nos. 6,546,397, 7,594,168, 9,063,755, 9,471,287, and 9,928,044.

C.      A judgment that Defendant's infringement of U.S. Patent Nos. 6,546,397, 7,594,168, 9,063,755, 9,471,287, and 9,928,044 has been willful;

D.      An award of attorneys' fees incurred in prosecuting this action, on the basis that this is an exceptional case;

E.      A judgment and order requiring Defendant to pay Plaintiff damages under 35 U.S.C. § 284, including supplemental damages for any

continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed, and treble damages for willful infringement as provided by 35 U.S.C. § 284;

F.      A judgment and order requiring Defendant to pay Plaintiff the costs of this action (including all disbursements);

G.      A judgment and order requiring Defendant to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

H.      A judgment and order requiring that Plaintiff be awarded a compulsory ongoing license fee; and

I.      Such other relief as the Court may deem just and proper.

Dated: September 1, 2020                        Respectfully submitted,

                                                DEVLIN LAW FIRM LLC

                                                */s/ Timothy Devlin*
                                                Timothy Devlin (No. 4241)
                                                tdevlin@devlinlawfirm.com
                                                1526 Gilpin Avenue
                                                Wilmington, DE 19806
                                                Telephone: (302) 449-9010
                                                Facsimile: (302) 353-4251

                                                Steven J. Rizzi
                                                srizzi@kslaw.com
                                                Ramy Hanna (DE Bar No. 5494)
                                                rhanna@kslaw.com
                                                KING & SPALDING LLP
                                                1185 Avenue of the Americas, 35th Floor
                                                New York, NY 10036
                                                Telephone: (212) 556-2100
                                                Facsimile: (212) 556-2222

                                                *Attorneys for Plaintiff Express Mobile, Inc.*